FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ADHEALTH, LIMITED,

      Plaintiff - Appellee,

v.

      No. 24-1273

PORTERCARE ADVENTIST
HEALTH SYSTEMS, a Colorado
corporation d/b/a Centura Health-
Porter Adventist Hospital,

      Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-01147-CMA-MDB)**

_____

Marshall N. Gilinsky, of Anderson Kill, P.C., New York, New York (Carrie M. DiCanio, of Anderson Kill, P.C., Denver, Colorado, with him on the briefs), for Defendant-Appellant.

Jane E. Young, of Wilson Elser Moskowitz Edelman & Dicker, LLP, Denver, Colorado (Michelle L. Yang, of Wilson Elser Moskowitz Edelman & Dicker, LLP, Denver, Colorado, and Sara J. Brundage and Eric Toepfer, of Honigam, LLP, Kalamazoo, Michigan, and Chicago, Illinois, with her on the brief), for Plaintiff-Appellee.

_____

Before **PHILLIPS**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

This case arises from an insurance dispute between a hospital and its excess-liability insurer. For about two years, PorterCare Adventist Health Systems ("PorterCare" or "the hospital") had inadequate surgical-sterilization procedures. When those inadequacies became public, PorterCare incurred over $40 million in liability resolving thousands of patients' claims. PorterCare sought coverage from AdHealth, its excess-liability insurer, for the full $40 million policy limit, claiming that the thousands of claims arose from one medical incident. AdHealth refused coverage and filed a complaint seeking a declaratory judgment that it did not owe PorterCare coverage under that reading of the policy, because in its view, a medical incident covers the injuries of only a single person, not multiple people. PorterCare counterclaimed for declaratory judgment and for breach of contract. The parties cross-moved for summary judgment. The district court granted summary judgment to AdHealth, agreeing with AdHealth's reading that a medical incident is limited to the acts or omissions that cause an injury to one person.

We agree that the policy's definition of "medical incident" unambiguously applies to the injuries of a single person. That means AdHealth owes coverage only for the claims of a single patient that trigger the excess policy's liability threshold, not for coverage of multiple patients' claims grouped together. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

2

## BACKGROUND

### I.    Factual Background

***The Sterilization Actions.*** In early February 2018, a whistleblower notified a hospital-accreditation organization that PorterCare had inadequate surgical-sterilization procedures. The organization investigated the hospital and swiftly announced that the hospital was "an immediate threat to health and safety." App. vol. I, at A98 ¶ 5. Soon after that announcement, Colorado's public-health department also began investigating the hospital. In April 2018, PorterCare closed its operating rooms for a week. The investigations revealed several deficiencies, including a "fail[ure] to implement and oversee sterilization policies; fail[ure] to train, hire and supervise employees; fail[ure] to properly sterilize equipment; knowingly underreporting patient infections; [and] overworking staff and understaffing operating rooms[.]" App. vol. VI, at A1448–49.

Soon after the investigation, PorterCare began notifying the thousands of patients who'd had orthopedic or spine surgery over a roughly two-year period that they had been exposed to a risk of surgical-site infections and blood-borne pathogens.[1] That letter prompted thousands of patients to sue

---

[1] The appendix contains the list of patients who received surgeries during the relevant period. The parties jointly moved to seal that record. Joint Mot. to Seal Document Containing Surgical Patient Names, *AdHealth, Ltd. v. PorterCare Adventist Health Sys.*, 24-1273 (10th Cir. Sept. 9, 2024), ECF No. 22. Because the material sought to be sealed contains the private medical

*(footnote continued)*

PorterCare in the following months and years. Those lawsuits were consolidated into four cases. Two of those cases involved patients who alleged surgical-site infections caused by PorterCare's inadequate procedures. The other two cases involved about 6,000 patients who were not infected but allegedly suffered emotional distress from the exposure.

PorterCare settled all four actions. In July 2020, it advised AdHealth of its view that all the claims in the sterilization actions were a single medical incident caused by one act: PorterCare's systemic breach of surgical-sterilization procedures. PorterCare sought coverage for the full $40 million policy limit because its payouts from the sterilization lawsuits exceeded that amount. A year later, AdHealth issued a reservation-of-rights letter stating its position that each patient's claim is a separate medical incident and that AdHealth was liable only for individual claims exceeding PorterCare's $2 million self-insurance.

***The Insurance Program.*** PorterCare insures itself for the first $2 million of liability per medical incident through a Standard Regional Trust Coverage Agreement. That insurance is called Self Insurance Retention (SIR). In 2018, to

---

information of third parties, we grant the parties' motion. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1136 (10th Cir. 2011) (granting motion to seal appendix where "[n]early every document in the volume at issue includes the name of, and/or personal and private medical information" of an individual).

cover liability that exceeds its self-insurance, PorterCare bought two policies from AdHealth.

The "First Layer Excess Policy" covers PorterCare's excess liability beyond the $2 million SIR, up to $25 million per medical incident.[2] The "Second Layer Excess Policy" covers liability that exceeds the first-layer policy up to another $15 million per medical incident. So for a medical incident causing $50 million in liability, PorterCare pays the first $2 million under the SIR, AdHealth pays $40 million under the first- and second-layer-excess policies, and PorterCare pays the remaining $8 million.

PorterCare's excess-liability policies with AdHealth define a "medical incident" as follows:

Medical incident means any act or omission,

1.  in the provision of or failure to provide professional healthcare services to the *participants' patients*, including:

    a.  the furnishing of food, beverages, medications or appliances in connection with such services,

    b.  the postmortem handling of human bodies, and

    c.  maintaining the confidentiality of information regarding such services and limiting the release or use of such information in conformance with state or federal law,

---

[2] AdHealth is a captive insurance company, meaning it "provides coverage for the group or business that established it," or it is a subsidiary that provides insurance to its parent company. *Captive insurance*, Black's Law Dictionary (12th ed. 2024). Though the parties mention AdHealth's captivity, its status as a captive insurance company is not material to this case.

which *results in injury to a patient*, unless such injury arises directly from a named peril(s),

2. in the participants' conduct, protocols, development or use of investigational brochures, in connection with human clinical trials which results in injury to the participants' patient or the manufacture, handling, distribution or disposal of pharmaceuticals, biologics or medical devices, in connection with human clinical trials which results in injury to the participants' patient, or

3. arising out of the service by any natural persons or members of a formal accreditation, standards review or equivalent professional board or committee of the named participant or a person charged with executing the directives of such board or committee.

Any such act or omission, together with all related acts or omissions in the furnishing of such services *to any one person*, shall be considered *one medical incident.* . . .

App. vol. I, at A172 (emphasis added and omitted). In plainer language, a single medical incident includes any act or omission arising from any of three categories of conduct—(1) professional healthcare services, (2) human clinical trials, and (3) formal accreditation services—that results in injury to *one person*.

## II.    Procedural Background

About a year after AdHealth sent PorterCare its reservation-of-rights letter, AdHealth sued PorterCare for declaratory relief. It sought a declaratory judgment that each patient's claim constituted a single medical incident and that it had no duty to pay under the insurance policy until a claim's liability exceeded PorterCare's $2 million SIR. PorterCare counterclaimed for

declaratory relief and breach of contract. Both parties moved for summary

judgment.

The district court granted AdHealth summary judgment. *AdHealth, Ltd. v.*

*PorterCare Adventist Health Sys.*, No. 1:22-CV-01147-CMA-MDB, 2024 WL

3085990, at *6 (D. Colo. May 28, 2024). In analyzing the meaning of the

policy's definition of "medical incident," the district court relied exclusively

on the language in the first category—i.e., "any act or omission . . . in the

provision of or failure to provide professional healthcare services to the

*participants' patients* . . . which results in injury to a patient[.]"[3] App. vol. I, at

A172; *AdHealth*, 2024 WL 3085990, at *4. In its view, "a 'medical incident'

exists when an act or omission (1) provides healthcare services to a patient and

that act or omission (2) results in injury to that patient." *AdHealth*, 2024 WL

3085990, at *4. In other words, the district court agreed with AdHealth's

interpretation that a medical incident is limited to the injuries of a single

patient. So the court entered summary judgment for AdHealth. *Id.* at *6.

Because PorterCare's breach-of-contract claim was based on AdHealth's owing

---

[3] Both parties moved to strike or exclude expert testimony at summary
judgment. *AdHealth*, 2024 WL 3085990, at *1. The district court concluded that
because the meaning of "medical incident" was unambiguous, it did not need to
consider extrinsic evidence to decipher its meaning and denied the motions
as moot. *Id.* at *6. We will not disturb that ruling because we also conclude that
the meaning of "medical incident" is unambiguous and does not require
consideration of extrinsic evidence.

it coverage, the district court sua sponte dismissed that claim, which resolved all claims in the case. *Id.* at *6–7. PorterCare timely filed a notice of appeal.

## STANDARD OF REVIEW

"We review a district court's decision granting summary judgment *de novo*, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). We are "entitled to affirm a district court on alternative grounds" so long as "those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016).

## DISCUSSION

PorterCare appeals the district court's grant of summary judgment. It argues the district court erred because the policy's medical-incident definition unambiguously includes all the sterilization patients as falling within a *single* medical incident. According to PorterCare, the first category of the medical-incident definition unambiguously covers claims involving acts and omissions in the furnishing of treatment to *multiple* patients. *See* App. vol. I, at A172 ("Medical Incident means any act or omission . . . in the provision of or failure to provide professional healthcare services to the participants' patients . . . which results in injury to a patient." (emphasis omitted)). AdHealth disagrees and contends that the second half of the medical-incident definition unambiguously covers claims involving acts and omissions in the furnishing of

8

treatment to a *single* patient. *See id.* ("Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person, shall be considered one medical incident." (emphasis omitted)). We agree with AdHealth.

Because this is a diversity action, Colorado law applies. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). In Colorado, an insurance policy is a contract and is generally subject to contract-interpretation rules. *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Courts must read the contract as a whole and give the contract terms their plain and ordinary meaning unless a contrary intent is evidenced from the policy. *Id.* Whether a contract is ambiguous, meaning it is "fairly susceptible to more than one interpretation," is a question of law. *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1155 (10th Cir. 2008) (internal quotation marks omitted).

The parties dispute whether the term "medical incident" covers injuries to multiple patients from an ongoing but common cause or covers injuries for each individual patient so harmed. The second half of the medical-incident definition provides the answer: "Any such act or omission, together with all related acts or omissions in the furnishing of such services to *any one person*, shall be considered *one medical incident*." App. vol. I, at A172 (emphasis added and omitted). We find that language unambiguously says that each patient's claim is a separate medical incident.

9

Like us, courts in other jurisdictions have interpreted nearly identical language to mean that a medical incident is limited to the injuries of an individual patient. In *Harris Methodist Health System v. Employers Reinsurance Corp.*, the district court held that each hospital patient's claims arising from the same systemic harm constituted a single medical incident under a nearly identical medical-incident definition. No. 3:96-CV-0054-R, 1997 WL 446459, at *2, *6 (N.D. Tex. July 25, 1997). In that case, a surgical-scrub technician suffering from a drug addiction negligently exposed his patients to Hepatitis C. *Id.* at *1, *3. After this became known, two groups of plaintiffs sued the hospital: patients directly exposed to Hepatitis C, and non-patients who'd had contact with an exposed patient. *Id.* at *1. Like PorterCare, the hospital there argued that all the claimants together constituted one medical incident. *See id.* at *6. Applying a nearly identical medical-incident definition, the district court held that the claim of each hospital patient was a separate medical incident because they received separate treatments and services. *Id.*

Similarly, in *John Patty, D.O., LLC v. Missouri Professionals Mutual Physicians Professional Indemnity Ass'n*, the Missouri Court of Appeals interpreted a nearly identical medical-incident definition in holding that a mother's and child's medical-malpractice claims from an emergency cesarean section were separate medical incidents. 572 S.W.3d 581, 585, 589–91 (Mo. Ct. App. 2019). The court rejected the argument of the physician's insurer that the mother's and child's claims combined into one medical incident because they

were part of a series of related negligent acts.[4] *Id.* at 590. The court similarly held that the policy's language defined a single medical incident as any injuries caused by treatment to "any one person," rather than injuries caused by a "course of treatment." *Id.* at 590–91 (internal quotation marks omitted).

Though PorterCare claims to "read the contract as a whole," it slights the portion of the medical-incident definition that defines the scope of "medical incident."[5] Op. Br. at 21–22, 24. It would apply that language only to incidents in which multiple acts or omissions cause a single patient's injury. *Id.* at 24. We disagree with that partial reading.[6]

---

[4] The policy in that case used "medical occurrence" as the defined term but treated "medical incident" as an interchangeable term. *John Patty, D.O., LLC*, 572 S.W.3d at 589 (defining "medical occurrence" as, "Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person shall be considered one medical incident *or* occurrence" (emphasis added) (internal quotation marks omitted)).

[5] Like PorterCare, the district court considered the first half of the definition as the only relevant language, and considered the second half of the definition we rely on irrelevant. *AdHealth*, 2024 WL 3085990, at *4 & n.7. We disagree with that reading and affirm on an alternative basis, which AdHealth has asserted on appeal. *See Walton*, 821 F.3d at 1212 ("[T]his court is entitled to affirm a district court on alternative grounds that court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal.").

[6] Before the district court, PorterCare argued that two other provisions of the policy supported its reading of medical incident: the "Limits of Liability" provision and the "Non-Stacking" provision. App. vol. III, at A673–75. The district court concluded that those provisions were irrelevant to the unambiguous meaning of medical incident. *AdHealth*, 2024 WL 3085990, at *5–6. On appeal, PorterCare revives those arguments. Op. Br. at 25–27. We're unpersuaded. Though courts should read a provision "as a whole, rather than

(*footnote continued*)

At bottom, PorterCare purchased excess-liability coverage that unambiguously covers medical-incident liability for individual claimants. PorterCare could have bought a policy that grouped liability from multiple claims into a single medical incident. *See* Oral Argument at 23:20–24:05. So if PorterCare desired a policy that covered systemically inadequate treatment procedures that caused injuries to thousands of patients, then it should have bartered for it.

## CONCLUSION

We affirm.

---

reading [it] in isolation," we "should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy." *Cyprus Amax Mins. Co.*, 74 P.3d at 299. Because PorterCare points us to no language that shows a contrary intent, we decline to rewrite the medical-incident definition.